UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DONALD VERBANAC,

        Petitioner,

    v.                                          Case No. 11-C-0817

JEFFREY PUGH,

        Respondent.

**DECISION AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

### I.  INTRODUCTION

On August 29, 2011, the petitioner, Donald Verbanac ("Verbanac"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  On February 3, 2012, Chief United States District Judge Charles N. Clevert, Jr., to whom the case was originally randomly assigned, issued an order under Rule 4 of the Rules Governing § 2254 Cases, requiring the respondent to file an answer, motion, or other appropriate response to the petition within 60 days of the date of that order. Thereafter, upon both parties' consenting to magistrate judge jurisdiction, the case was reassigned to this court for processing and entry of final judgment.

On March 1, 2012, this court issued a briefing schedule under the terms of which the petitioner was to file his brief in support of his petition on or before May 18, 2012. Subsequently, both parties were granted extensions of time to file their respective briefs. As of September 13, 2012, when Verbanac filed his reply brief, the briefing on the claim set forth in his petition was completed. Thus, the issues raised in Verbanac's habeas petition are fully briefed and are ready for resolution. For the reasons that follow, Verbanac's petition will be denied and this action will be dismissed.

## II. PROCEDURAL AND FACTUAL BACKGROUND

The various written submissions filed by the parties demonstrate that on June 25, 2008, Verbanac was convicted, in the Washington County Circuit Court, of one count of second degree sexual assault of a child, in violation of Wis. Stat. § 948.02(2). The circuit court sentenced Verbanac to twelve years of initial confinement and fifteen years of extended supervision. Judgment was entered on August 21, 2008.

Subsequently, Verbanac filed a motion for postconviction relief pursuant to Wis. Stat. § 809.30. That motion was denied by the circuit court. Thereafter, on March 9, 2011, the Wisconsin Court of Appeals summarily affirmed the circuit court's denial of Verbanac's § 809.30 motion and his judgment of conviction. On September 1, 2011, the Wisconsin Supreme Court denied Verbanac's petition for review.

Verbanac's federal habeas corpus petition presents only one claim:

> The petitioner was denied effective assistance of trial counsel before trial when trial counsel failed and refused to file a motion to suppress evidence and the petitioner's statement based on the petitioner's warrantless arrest inside the petitioner's home in violation of the fourth and sixth amendment.

(Pet. at 2.)

The facts giving rise to Verbanac's conviction and the steps of his journey through the Wisconsin state courts are set forth in the court of appeals's decision affirming Verbanac's judgment of conviction.

> In June 2008, a jury convicted Verbanac of second-degree sexual assault of D.M., who was fifteen years old at the time of the offense. The assault occurred in the bedroom occupied by E.L., a friend of the victim, who was living in Verbanac's house. During a search of Verbanac's home, the sheriff's department recovered D.M.'s pajama bottoms from E.L.'s bedroom; the pajamas yielded Verbanac's DNA. Vaginal swabs of D.M. also yielded Verbanac's DNA. Verbanac confessed to the assault during interrogation. The jury rejected Verbanac's defense that he did not commit the assault.

2

Verbanac's postconviction counsel filed a WIS. STAT. RULE 809.30 motion alleging ineffective assistance of trial counsel for failing to seek suppression of the victim's pajama bottoms and for failing to seek suppression of Verbanac's DNA sample because it was procured as the result of an illegal arrest. Thereafter, Verbanac discharged postconviction counsel and filed a *pro se* motion complaining that trial counsel did not seek suppression of evidence on the following grounds: Verbanac did not consent to a search of his home, there was no probable cause to search his home, the sheriff's department conducted a warrantless search, and the sheriff's department made a warrantless arrest. Verbanac also claimed that he did not have a timely probable cause determination after his arrest.

The circuit court determined that postconviction counsel's motion merely made conclusory allegations and did not reach the threshold required to obtain an evidentiary hearing under **State v. Machner**, 92 Wis. 2d 797, 804, 285 N.W. 2d 905 (Ct. App. 1979). The court also concluded that Verbanac's *pro se* claims regarding the absence of probable cause and an untimely probable cause determination were contradicted by the record. Verbanac appeals.

On appeal, Verbanac makes numerous ineffective assistance of trial counsel arguments. However, all of these claims are waived because they were not raised in the circuit court in either postconviction motion. We do not consider issues raised for the first time on appeal. *See State v. Kaster*, 148 Wis. 2d 789, 804-05, 436 N.W. 2d 891 (Ct. App. 1989). The only issues properly raised on appeal are the issues raised in counsel's postconviction motion having to do with trial counsel's failure to seek suppression of the pajamas and the DNA evidence arising from an allegedly unlawful search and seizure.

The circuit court denied Verbanac's postconviction motion without a hearing. A circuit court has discretion to deny a postconviction motion without a hearing "if the record conclusively demonstrates that the defendant is not entitled to relief." **State v. Allen**, 2004 WI 106, ¶ 9, 274 Wis. 2d 568, 682 N.W.2d 433. We review the circuit court's decision for an erroneous exercise of discretion. **Id**.

Trial counsel is not ineffective if he or she does not bring a motion that would have failed. **State v. Simpson**, 185 Wis. 2d 772, 784 519 N.W. 2d 662 (Ct. App. 1994). The record conclusively demonstrates that Verbanac's complaint that counsel failed to seek suppression has no merit. Therefore, the court properly denied the motion without a hearing.

Verbanac argues that his trial counsel should have moved to suppress evidence because Verbanac was the subject of an illegal search and arrest. The record conclusively shows that Verbanac's arrest was based on the requisite probable cause. *See State v. Kutz*, 2003 WI App 205, ¶ 11, 267 Wis. 2d 531, 671 N.W.2d 660. At the time Verbanac was arrested, law enforcement had signed statements from D.M. and E.L. identifying Verbanac as D.M.'s assailant. During D.M.'s sexual assault examination she identified Verbanac as her assailant, and the officers who arrested

3

Verbanac at his home knew him from prior contacts. This evidence would have led a reasonable officer to believe that Verbanac probably committed a crime, which satisfied the probable cause standard. *See State v. Secrist*, 224 Wis. 2d 201, 212, 589 N.W. 2d 387 (1999). Having been arrested on probable cause, Verbanac was not illegally detained at the time he gave a DNA sample.

Verbanac's claim that the police conducted an illegal search also lacks merit on this record. E.L., who resided in Verbanac's home, gave permission to search her bedroom where the assault occurred and where D.M.'s pajama bottoms were found. A warrantless entry and search with the voluntary consent of a person who shares, or is reasonably believed to share, authority over the area in common with a co-occupant is a recognized exception to the warrant requirement of the Fourth Amendment. *Georgia v. Randolph*, 547 U.S. 103, 106 (2006). E.L. consented to the search, and the search was not illegal.

Because neither of Verbanac's ineffective assistance claims had merit, the circuit court properly exercised its discretion in denying counsel's postconviction motion without an evidentiary hearing.

(Ct. App. Dec., Ans., Ex. E at 2-4) (footnotes omitted).

### III. STANDARD OF REVIEW

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [State] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997). Title 28 U.S.C. § 2254 states, in pertinent part, the following:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 100 Stat. 1214, which provides, in pertinent part, that the federal courts may not grant habeas relief unless the state court's judgment:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

4

States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000) (citing *Hogan v. Hanks*, 97 F.3d 189, 192 (7th Cir. 1996)).

A decision is "contrary to" established federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). However, in a habeas case, "[a] state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite [the Supreme Court's] opinions." *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). A state court need not even be aware of Supreme Court precedent "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id*.

A state court decision results in an "unreasonable application" of clearly established federal law when that court either: (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407; *see also Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004). However, a federal habeas court may not grant relief under the "unreasonable application" prong unless the state court's application of Supreme Court precedent "l[ies] well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002) (citing *Williams*, 529 U.S. at 411). Furthermore, issues of fact found by a state court are presumed

to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir. 1997).

## IV. DISCUSSION

As previously stated, the petitioner's sole claim is that his trial counsel was ineffective for not moving to suppress the evidence seized from the bedroom in which the assault took place and for not moving to suppress any evidence obtained as a result of the arrest of Verbanac, which arrest he claims was without probable cause.

Defendants in criminal cases have a constitutional right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 , 686 (1984). In order to establish an ineffective assistance of counsel claim, a defendant must demonstrate both that counsel's assistance was ineffective, and that the ineffective assistance prejudiced the defendant. A defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The burden on a habeas petitioner to show that counsel's assistance was ineffective is not easily satisfied. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

6

Furthermore, a  habeas court need not address the two prongs of *Strickland* in any particular order or even address both if the defendant makes an inadequate showing as to one.  In this latter regard the Supreme Court in *Strickland* stated as follows:

> [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.  In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

466 U.S. at 697.

In deciding Verbanac's ineffective assistance claims the Wisconsin Court of Appeals did not expressly refer to the two pronged test of *Strickland*.  Rather, it rested its decision on the principle that "[t]rial counsel is not ineffective if he or she does not bring a motion that would have failed." (Ct. App. Dec., Ans., Ex. E at 3.)  The court of appeals cited *State v. Simpson*, 185 Wis. 2d 772, 519 N.W. 2d 662 (Ct. App. 1994), for that proposition.  Significantly, however, the court in *Simpson* quoted from *Strickland* in setting forth the test to be applied in assessing an ineffective assistance of counsel claim: "The test is two-pronged: 'First, the defendant must show that counsel's performance was deficient . . . Second, the defendant must show that the deficient performance prejudiced the defense.'" *Simpson*, 185 Wis. 2d at 781, 519 N.W. 2d at 664.  In other words, the court of appeals in Verbanac's case made clear that it was well aware of the correct governing legal rule from the United States Supreme Court. Thus, the only question for this court to decide is whether the state court unreasonably applied *Strickland* to the facts in Verbanac's case.

In *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986), the United States Supreme Court stated the following:

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his

Case 2:11-cv-00817-WEC   Filed 10/18/12   Page 7 of 15   Document 39

Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

Based on the facts as found by the state court, a motion to suppress the evidence found in the bedroom occupied by D.M. at the time of the assault would surely have been meritless. This is because E.L., who resided in Verbanac's home and who occupied that bedroom, consented to the search during which the pajama bottoms were found and seized. As noted by the Wisconsin Court of Appeals in Verbanac's appeal, the Supreme Court in *Georgia v. Randolph*, 547 U.S. 103 (2006) stated as follows:

> The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained.

547 U.S. at 106 (*citing Illinois v. Rodriguez*, 497 U.S. 177 (1990) and *United States v, Matlock*, 415 U.S. 164 (1974)).

In an effort to demonstrate that E.L. could not legally have consented to the search of her bedroom, Verbanac asserts in his reply brief that "E.L. never resided at the petitioner's residence." (Reply Br. at 2.) But the record shows otherwise.

More precisely, E.L. testified that she lived with Verbanac in his home from mid-August to September 19, 2007. (Ex. H, Doc. 13-9 at 160.) Indeed, Verbanac himself testified that E.L. lived in his house on September 19, 2007, i.e., the day of the assault. (Ex. J, Doc. 13-12 at 53-56.)

As stated previously, issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Verbanac has not presented any evidence (much less clear and convincing evidence) to rebut the fact (as found by the state courts) that E.L. consented to a search of *her* bedroom in the home. Given that she was in fact living in Verbanac's house, E.L.'s consent was facially sufficient

8

for law enforcement to legally enter and search her bedroom. It therefore would appear that any motion to suppress the evidence seized in the room, i.e., the pajama bottoms, would have been denied. Such being the case, even assuming *arguendo* that Verbanac's lawyer could have filed a motion to suppress, Verbanac did not suffer any prejudice by his not doing so. The pajama bottoms seized in the bedroom (as well as Verbanac's DNA found thereon) were coming in as evidence against Verbanac regardless of whether a motion to suppress was filed.

But wait. Would it make any difference if Verbanac himself refused to consent to the search of his home? If he did, would that vitiate E.L.'s consent?

Verbanac argues that, regardless of what E.L. did, *he did not* consent to the officers' entering his house. Indeed, he asserts in his petition "that [he] told the sheriff's that they could not search his home. The sheriff's placed handcuffs on the petitioner, placed the petitioner under arrest, and searched the petitioner's home." (Pet. at 2.) Assuming that this is true, there arises the issue of how, if at all, the Supreme Court's holding in *Randolph* applies in Verbanac's case.

In *Randolph* the Court held that "a physically present inhabitant's express refusal of consent is dispositive as to him, regardless of the consent of a fellow occupant." 547 U.S. at 122-23. Even more particularly, the Court stated:

> The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of the evidence obtained. *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.ED.2d 242 (1974). <u>The question here is whether such an evidentiary seizure is likewise lawful with the permission of one occupant when the other, who later seeks to suppress the evidence, is present at the scene and expressly refuses to consent. We hold that, in the circumstances here at issue, a physically present co-occupant's stated refusal to permit entry prevails, rendering the warrantless search unreasonable and invalid as to him.</u>

Case 2:11-cv-00817-WEC   Filed 10/18/12   Page 9 of 15   Document 39

547 U.S. at 106 (emphasis provided.)  Under *Randolph*, "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident."  547 U.S. at 120.

Assuming that Verbanac did in fact tell the officers that they could not enter his house, would his refusal to allow them to do so trump the consent they previously received from E.L. to search her bedroom?  This court's independent research has not uncovered any case with the precise facts presented by the instant case, to wit, a prior consent being given by a co-occupant who is not present when the officers arrive at the place to be searched and thereafter meet another co-occupant who expressly refuses to allow the search.  So it seems that the holding in *Randolph* might support Verbanac's right to refuse the search.  But does this mean that he is entitled to habeas corpus relief based on ineffectiveness of counsel for failing to seek suppression of the pajama bottoms based on such refusal to search?  I think not.

To reiterate, in order to be entitled to habeas relief on grounds of ineffectiveness of counsel, Verbanac must show that he was prejudiced by such ineffectiveness. And, in my opinion, he cannot do so. This is because, as set forth below, the officers had probable cause (1) to arrest Verbanac at the time they confronted him at the front door of his house, and (2) to obtain a warrant to search for evidence at the scene of the recently committed crime (E.L.'s bedroom).  The Supreme Court "has frequently approved warrantless seizures of property, on the basis of probable cause, for the time necessary to secure a warrant, where a warrantless search was either held to be or likely would have been held impermissible."  *Segura v. United States*, 468 U.S. 796, 806 (1984).

Even assuming that Verbanac had refused them entry into the house so that they might search E.L.'s bedroom, Verbanac would certainly not have been allowed to close the door and walk away

from the officers. To the contrary, at a minimum, he would have been detained while they applied for a warrant to enter the house and search E.L.'s bedroom, which they certainly would have done. After all, if they had probable cause to arrest Verbanac (which they did, as discussed below), they also had probable cause to obtain a warrant to search for evidence at the scene of the recently committed crime (E.L.'s bedroom). The officers were not operating on a blank slate. They had already been told about the assault, precisely where it occurred and, consequently, where evidence of the assault (in particular the pajama bottoms) would be found. (See testimony of Deputy Keith Uhan, Ex. I, Doc. 13-11 at 144-45; 156.) Thus, the officers had probable cause to obtain a search warrant, and under *Segura*, they were permitted to secure Verbanac's residence until the search warrant was secured.

In other words, the pajama bottoms and the incriminatory evidence that they contained would inevitably have been discovered by law enforcement. *See United States v. Johnson*, 380 F.3d 1013, 1014 (7th Cir. 2004) ("The 'inevitable discovery' doctrine allows the government to use evidence that it obtained illegally but would have obtained legally in any event.") (*citing Murray v. United States,* 487 U.S. 533, 537 (1988)); *see also Nix v. Williams*, 467 U.S. 431, 444 (1984) ("If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received.") Such being the case, it once again follows that any motion to suppress would not have been successful. The evidence was going to come in regardless of whether a motion to suppress had been filed.

Turning to the matter of Verbanac's arrest, Verbanac argues that his lawyer should have filed a motion to suppress any evidence obtained as a result of his arrest because, according to Verbanac, he was arrested without probable cause. But this argument likewise goes nowhere.

11

As previously noted, the state courts found that there was probable cause to arrest Verbanac.

At the time Verbanac was arrested, law enforcement had signed statements from D.M. and E.L. identifying Verbanac as D.M.'s assailant. During D.M.'s sexual assault examination she identified Verbanac as her assailant, and the officers who arrested Verbanac at his home knew him from prior contacts. This evidence would have led a reasonable officer to believe that Verbanac probably committed a crime, which satisfied the probable cause standard. *See State v. Secrist*, 224 Wis. 2d 201, 212, 589 N.W.2d 387 (1999). Having been arrested on probable cause, Verbanac was not illegally detained at the time he gave a DNA sample.

(Ct. App. Dec., Ans., Ex. E at 4.)

Probable cause to conduct a warrantless arrest exists when police have, at the moment of arrest, knowledge of facts and circumstances grounded in reasonably trustworthy information and sufficient in itself to warrant a belief by a prudent person that an offense has been or is being committed by the suspect. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964). Probable cause is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983).

Applying these principles to the facts in this case leads inescapably to the conclusion that the officers had probable cause to arrest Verbanac. Indeed, D.M. identified Verbanac as the person who had sexually assaulted her. At the time of Verbanac's arrest, the officers also had the statement of E.L., which statement supported D.M.'s allegations. And even more to the point, Verbanac has not presented any argument to demonstrate the state court's judgment "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). At most, he argues that the state court's decision was wrong, i.e., that he does not agree with it. But that is not enough to obtain federal habeas corpus relief.[1]

---

[1] Verbanac also seems to claim that he was arrested "inside" his home and that a warrant was needed in order for the officers to enter his home to arrest him. However, the record demonstrates that

In conclusion, Verbanac's federal habeas corpus petition will be denied and this action will be dismissed.

## V. CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides, in pertinent part, as follows:

> a) Certificate of Appealability. The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Under 28 U.S.C. § 2253(c), a district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court of appeals has held that this standard differs only in scope from the certificate of probable cause standard that was previously developed and applied by the courts. *See Herrera v. United States*, 96 F.3d 1010, 1012 (7th Cir. 1996). The *Herrera* court said that "a certificate of probable cause places the *case* before the court of appeals, but a certificate of appealability must identify each *issue* meeting the 'substantial showing' standard." *Id*. Thus, for the court to issue a certificate of appealability to Verbanac, it must identify for the court of appeals the issues that are "debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'" *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (emphasis added) (quoting *Gordon v. Willis*, 516 F. Supp.

―――――――――――――

the officers did not need to break into his home in order to take him into custody. To the contrary, the record demonstrates that Verbanac answered the door and was thereafter taken into custody by the officers. (Ex. J, Doc. 13-12 at 64-67.)

13

911, 913 (N.D. Ga. 1980)).  This test was reiterated in *Miller-El v. Cockrell*, 537 U.S. 322 (2003),

*rev'd on other grounds, Miller-El v. Dretke*, 545 U.S. 231 (2005).

> Consistent with our prior precedent and the text of the habeas corpus statute, we reiterate that a prisoner seeking a COA need only demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.

*Id.* at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

In my opinion, and for the reasons set forth in this decision denying Verbanac's claim of ineffective assistance of counsel, Verbanac's claim on such issue does not warrant a certificate of appealability.  Put simply, the petitioner has not shown "a substantial showing of the denial of a constitutional right" by demonstrating either that jurists of reason could disagree with this court's resolution of this claim or that jurists could conclude the issue presented is adequate to deserve encouragement to proceed further. Consequently, the court will deny Verbanac a certificate of appealability on his claim.

Of course, Verbanac retains the right to seek a certificate of appealability from the court of appeals.  *See* Fed. R. App. P. 22(b).

**NOW THEREFORE IT IS ORDERED** that the claim set forth in Verbanac's habeas corpus petition be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that Verbanac's habeas corpus petition and this action be and hereby are **DISMISSED**;

**IT IS FURTHER ORDERED** that a certificate of appealability be and here is **DENIED**;

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

**SO ORDERED** this <u>18th</u> day of October 2012 at Milwaukee, Wisconsin.

**BY THE COURT**:

<u>s/ William E. Callahan, Jr.</u>
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge